### ELLING v. KOHLER.

No. 19549. Opinion Filed Nov. 18, 1930.

Rehearing Denied June 30, 1931.

I. E. Hill and E. B. McMahan, for plaintiff in error.

Ross Rizley, R. B. Loofbourrow, and Orlando F. Sweet, for defendant in error.

DIFFENDAFFER, C. This action was commenced in the district court, Cimarron county, by the defendant in error, hereinafter referred to as plaintiff, to determine and establish his interest in an irrigation project; to require defendant to complete same, and repair that part which had been completed, and for an accounting between the parties. Before trial was had the dam across the stream from which water obtained was washed away, and the completion and repair of the project was abandoned, and the suit resolved itself into one of accounting only. The matter was referred to a referee, who took the evidence and reported same, together with his findings of fact and conclusions of law. These were in favor of plaintiff. Exceptions to the report were filed by defendant, and were overruled by the trial court. The report of the referee was confirmed and judgment rendered for plaintiff. After motion for new trial was overruled, defendant brought this appeal.

The action is based upon a contract entered into between the parties on the 15th day of February, 1918, whereby defendant, described therein as party of the first part, in consideration of the sum of $3,000, sold to plaintiff an undivided one-fourth interest in the project, consisting of the dam, damsite, ditches used and to be used on the north side of the Cimarron river, and the water right theretofore secured by plaintiff from the state of Oklahoma. The portion of the contract material here reads as follows:

"It is further agreed that in the future party of the first part is to pay three-fourths

and party of the second part one-fourth of all expenses of whatsoever nature in connection with the building and operation of said irrigation works."

Plaintiff alleged that, because of the failure of defendant to complete the project, keep it in repair. etc., in order for him to obtain water for irrigation purposes, it became necessary for him to do certain work and repairs on the project, which he did at his own expense in the sum of $2,042.60; that defendant had not reimbursed him therefor in any sum, and among other things prayed for judgment for three-fourths thereof, or such sum as the court might find due after a full accounting.

Defendant alleged that when he sold the one-fourth interest in the project to plaintiff, the ditch had been completed from the dam to a certain point designated as "station 158"; that during the year 1918, he and plaintiff completed said ditch to station No. 310-30. the west line of plaintiff's land, except the installation of certain steel flume pipes; that thereafter, and after the purchase of said pipes, they entered into a subsequent oral agreement wherein it was agreed that, in consideration of defendant selling plaintiff an interest in certain lands lying closer to the dam than plaintiff's land, the completion of the ditch beyond a certain point designated as station 265-30 (near the land last mentioned) should be postponed until such time as plaintiff should bring the land in which defendant had agreed to sell him a one-half interest, under irrigation and in a state of cultivation; that plaintiff had never improved said land, with certain exceptions, and that because plaintiff had without the consent of defendant done certain work in the construction of the ditch below, or beyond station 265-30, without the consent of defendant, he was not entitled to recover therefor.

By cross-petition defendant alleged certain expenses incurred in cleaning and repairing the ditches, etc., which he alleged plaintiff refused to pay his one-fourth part; and also certain work and labor done and expenses paid by him in attempting to place in cultivation and under irrigation certain of the land in which he had sold plaintiff a one-half interest amounting to $429.44, one-half of which he alleged plaintiff owed him. He also claimed $250 for and on account of certain timber he alleged plaintiff had cut, removed, and sold from the jointly owned land, and damages on account of the alleged removal by plaintiff of the steel flume pipes leading from the main ditch to said land, whereby he alleged it was made impossible to obtain water thereon for ir-

rigation purposes. The aggregate amount of his claim against plaintiff was $2,136.25.

As stated before, the cause was referred to a referee, who took the evidence and returned same to the court with his findings of fact and conclusion of law, recommending a judgment for plaintiff in the sum of $1,038.68, with interest at 6 per cent. from March 27, 1923.

There are eight assignments of error, but in defendant's brief they are all presented under two propositions:

(1) The report of the referee and judgment of the court are contrary to both the law and the evidence, and (2) error in finding that there was no evidence showing that defendant had conveyed land to plaintiff in furtherance of a contract to postpone completion of the ditch below station 265-30, and in overruling defendant's motion to refer the matter back to the referee for further evidence.

Three points are presented under the first proposition. The first and second are that the burden was upon plaintiff to prove that the work done by him was authorized by defendant, or to show a contract express or implied whereby defendant agreed to compensate plaintiff therefor, and that plaintiff wholly failed to sustain this burden.

It is first contended that, under the general rules relative to cotenants, plaintiff is not entitled to reimbursement for the improvements voluntarily made by him, without the consent of defendant, and in support of the contention defendant cites 7 R. C. L., page 837, as follows:

"Generally speaking, where one of several cotenants makes improvements on the common property without the consent of the others, neither the property nor his cotenants are chargeable as a matter of right with their value. or the expenses incurred in making them."

To this general rule, there are several well established exceptions. The rule as announced is based upon the assumption that there is no express contract or agreement between the parties. Here we have an express agreement entered into at the time plaintiff purchased his interest in the project. In 7 R. C. L. 840, the following rule is stated:

"For improvements made by a cotenant he cannot maintain any action which will result in a personal judgment against any of his fellow tenants, unless he can prove an express promise to pay him, or such a state of circumstances that a promise should be implied."

The contract, in part, provides:

"It is further agreed that in the future party of the first part is to pay three-fourths and party of the second part one-fourth of all expenses of whatsoever nature in connection with the building and operation of said irrigation works."

In the same paragraph of R. C. L. quoted from above, the following also appears:

"But an express promise to pay for improvements is not indispensable to the liability of one cotenant to another for his share of the expenses thereof. The circumstances of the case may show that when the improvements were made, all the parties in interest must have understood that the expense of making them was a joint burden to be borne by all; and a promise on the part of each to pay for his share must be implied, and this implied promise, like any other, may support an action, if there is a breach thereof."

Aside from the contract itself, the evidence of both parties clearly shows that it must have been mutually understood that each party was to bear his proportionate share of the work to be done.

The record shows that they had a settlement of oil matters down to the 25th day of August, 1918. They mutually agreed that in keeping their accounts of work done by each, the work of one man per day should be valued at $2.50, and the work of one horse should be valued at $1.25. Thereafter each party kept account of the work done by him on this basis. Defendant recognized and kept his accounts accordingly. His proof was made on this basis, both as to the work done on the ditch and on the jointly owned land. The case was tried by both parties upon this theory.

Furthermore, the record shows that defendant consented to nearly all the work done by plaintiff, and none of it was shown to be unnecessary. In fact, the evidence shows that defendant worked along side of plaintiff in most of the work.

Under the express agreement, circumstances of the case showing the mutual understanding, and the theory upon which the case was tried, defendant's contention in this regard cannot be upheld.

We have carefully examined the entire record, and it discloses that each party was given full opportunity to and did present fully each item of his claim and the findings of the referee, and the trial court as to the several items are fully sustained by the evidence.

Point three is that there is a conflict between the finding of the referee and that of the court, in that the referee in his finding No. 18 finds that the alleged agreement in defendant's answer and cross-petition as to the postponement of the completion of the ditch below station 265-30, in consideration of defendant conveying certain land to plaintiff, is not supported by a preponderance of the evidence, while the court, in the journal entry, finds the agreement was entered into, but that there was no evidence in the record showing that said land was conveyed to plaintiff in furtherance of said contract.

The testimony of defendant does show that the agreement was made and plaintiff does not specifically deny same. Plaintiff testifies that an agreement of this nature was entered into and placed in escrow, but neither plaintiff nor defendant testified that the land was ever, in fact, deeded or conveyed to plaintiff. The court was correct in its findings that the agreement was entered into.

Defendant under his second proposition contends that the court erred in finding that there was no evidence in the record showing that the land referred to in the alleged agreement to postpone completion of the ditch was conveyed to plaintiff in furtherance of said contract.

We have carefully examined the record, and conclude that the finding of the trial court on this point is against the clear weight of the evidence. As stated before, plaintiff testified to an agreement which he says was an escrow agreement. The land in question, or a part thereof, is referred to in the record as the "Bickel land." Defendant testified a number of times that he sold a half interest in the land to plaintiff. The record further discloses that, sometime prior to June 30, 1920, the parties had some misunderstanding relative to their respective rights in the distribution of water and the management of the project. They appear to have submitted their differences to arbitrators, and on June 30, 1920, entered into a written agreement, in substance, putting into effect the recommendation of the arbitrators. A part of this agreement deals with the Bickel land and refers to same as being jointly owned, and provides that defendant should have full and complete charge thereof during the balance of the year 1920, and in his own way attempt to obtain a stand of alfalfa thereon during said year, and further provides that if defendant failed to secure a good stand of alfalfa on said land during 1920, then plaintiff should be entitled to take charge during the year 1921, and in his own way attempt to secure

a stand of alfalfa. The last paragraph of the contract provides:

"It is further agreed that when the said party of the second part shall have seeded and got a good stand of producing crops on his own land, to the amount of 60 acres, then he is to sell and convey his interest in and to the land about described as the Bickel land to said first party, said second party to set a price on said land and said first party shall have the right to give or to take."

It will thus be seen that both parties recognized plaintiff as the owner of an interest in the Bickel land, and by his contract above mentioned he agreed to sell and convey his interest therein back to defendant at such time when he should get a good stand of producing crops on his own land to the extent of 60 acres.

The record shows that when defendant was asked the direct question whether he had deeded the land in question to plaintiff, he failed to answer either in the affirmative or the negative. This appears twice in the record. Defendant contends in his brief that these questions were, in fact, answered in the affirmative by defendant, and that for some reason not explained the answers were left out of the transcript of the record. He complains that the court erred in overruling his motion to re-refer to the referee to supply this omission. But we are unable to find such a motion in the record. But from the record as a whole the great weight of the evidence we think shows the conveyance of one-half interest in the Bickel land by defendant to plaintiff, and an agreement to reconvey under certain conditions by plaintiff.

Clearly, then plaintiff is not entitled to recovery for that part of the work done by him on the ditch below station 265-30, after the date of the agreement.

The amount thereof is not pointed out by defendant; nor does it clearly appear from the record.

However, we have carefully examined the record, and it appears that none of the work for which plaintiff claims was done below station 265-30, during the years 1919, 1920, 1921, and 1923. It is not clear just what part of the work claimed for during the year 1922 was done below that station, but we think a careful examination of the record, giving defendant the benefit of any doubtful items, will show that not to exceed $129 of the work claimed for during that year was done below station No. 265-30. Three-fourths of this amount or $96.75 is not properly chargeable to defendant.

This being an action of purely equitable cognizance, this court will upon appeal weigh the evidence and render such judgment as should have been rendered by the trial court.

The judgment should be and is hereby modified as to the amount thereof, and reduced to the sum of $941.93, and in all other respects is affirmed.

TEEHEE, EAGLETON, HALL, and HERR, Commissioners, concur.

By the Court: It is so ordered.