Helen Alvarez HILL, one and the same person as Mrs. M. H. Alvarez, and C. Ray Robinson, Appellants,

v.

Freddie Morgan FIELD, Administratrix of the Estate of Fred Morgan, Deceased, Appellee.

No. 9166.

United States Court of Appeals Tenth Circuit.

Nov. 7, 1967.

Francis S. Irvine, of Kerr, Davis, Irvine, Burbage & Hentz, Oklahoma City, Okl., for appellants.

George Bingaman, Purcell, Okl. (Thomas G. Smith, Purcell, Okl., on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This diversity action was brought in an Oklahoma state district court by Fred Morgan against the two appellants to recover from appellant Hill an amount of money in excess of $30,000.00 as her pro rata share of expenses incurred by Morgan in the operation of certain producing oil and gas leases jointly owned by them and to establish a lien upon Hill's interest in the leases and against the interest of appellant, C. Ray Robinson, who had acquired a production payment interest in the property from Hill. Appellant Hill counterclaimed. During the pendency of the litigation, Morgan died and appellee, as Administratrix of the Fred Morgan Estate, was substituted as party plaintiff. Trial was had to the court, judgment was rendered in favor of appellee-plaintiff, as prayed for, the counterclaim of Hill was denied and this appeal was taken.

There is no conflict between the parties as to the proportionate share of operating costs on the various properties involved chargeable to appellant Hill. This amount is $31,771.75 and such sum is unquestionably owed by appellant. The principal controversy, as presented here, concerns the two claims asserted by appellant in her counterclaim and the nature of the judgment rendered.

It is urged generally that the findings of fact by the trial court as to appellant Hill's claims are not supported by the evidence, are against the great weight of the evidence and are clearly erroneous. Specifically, the two claims appellant asserted in her counterclaim involved (1) the amount of $13,995.10, which was paid by appellant to Fred Morgan on two invoices in January, 1961, and which she asserts was mistakenly and inadvertently paid by her, and (2) the amount of $20,000.00, which she asserts should be refunded to her from appellee because of an alleged oral agreement she had with Morgan. Factually, the trial judge found against appellant and in pertinent part stated: "Defendant Hill by counter-claim seeks to recover from plaintiff two claims, one for $13,995.10 representing workover and repletion costs on the Lockmiller lease inadvertently paid by her and which she asserts to be improperly charged to her; and the other for $20,000 alleged to be an 'agreed reduction in value' of her interest purchased from plaintiff in the Jennings lease by reason of plaintiff's misrepresentation to her concerning the Bromide sand formation underlying the Lockmiller and Jennings leases." Then, after detailing the evidence adduced, in finding 14 the trial judge states, "Invoice No. 10-105 for

$10,778.44 and Invoice No. 11–107 for $3,816.66 were appropriate charges against Alvarez [Hill] for reworking and recompleting the Lockmiller well." In finding 27 he found "There was no agreement between Morgan and Hill that $20,000 credit was due Hill as 'an agreed reduction in value' of the Jennings lease by reason of wrong information given her concerning the Bromide formation at the time she entered into the agreement of December 29, 1961."

Morgan and Hill were tenants-in-common in several oil and gas leasehold estates in Oklahoma. The trial judge, as to the business relationship between them, expressly found: That there was a business arrangement between them, whereby Morgan would operate the leases, paying all expenses in connection therewith, and Hill would reimburse him for her proportionate share of the expenses, after invoice, on a monthly basis; that formal operating agreements in writing were entered into by them covering the Morgan Flint Creek Unit and the Owens and Barger leases; that although Morgan had written Hill that operating agreements covering other jointly owned oil and gas properties would be prepared and sent to her for execution in the near future, there was no evidence to show the execution of such written agreements.

■ Under Rule 52(a) and the many decisions of this court[1] since the adoption of the Rule the findings of the trial court are presumptively correct and we cannot disturb them unless we are able to conclude from the entire record that they are clearly erroneous. We see this phase of the case, principally, as a fact case and are bound to adhere to this firmly established rule.

■ Appellant's second point is that the trial court was without authority to render personal judgment against Mrs. Hill or to award an equitable lien against her undivided interests in certain oil and gas leases. As authority for the proposition appellant quotes from Williams and Meyers, Oil and Gas Law, § 504.1. The authority cited, however, refers to the situation where the co-tenant is non-consenting and non-joining. The property concepts involved require that expenses to be paid by a non-consenting co-tenant for development of the land held in cotenancy be taken from his payments from such development and not by a personal judgment against the co-tenant. These concepts, however, are not controlling where the development is pursuant to an agreement, as the trial court found here. In the instant case, the development proceeded with Mrs. Hill's consent and under an agreement for reimbursement between the parties.[2] Oklahoma law is well settled that where a development is made by one co-tenant pursuant to an agreement or understanding with the other cotenant that they are to share in the burden the developing co-tenant is entitled to a personal judgment against the other co-tenants. Elling v. Kohler, 150 Okl. 129, 3 P.2d 161; 86 C.J.S. Tenancy in Common § 70, p. 460.

■ The third point raised on appeal concerned the trial court's legal conclusion that payments held by Sunray DX Oil Company and owing to appellant Robinson could be applied to the amount owed appellee.[3] Mrs. Hill sold to C. Ray

1. National Metals Co. v. Sapir, 10 Cir., 382 F.2d 100; Stoody Co. v. Royer, 10 Cir., 374 F.2d 672; Western Distributing Co. v. United States, 10 Cir., 318 F.2d 353.

2. In specific the trial court found that: "Fred Morgan and Helen Alvarez became acquainted in 1958 and over the years she acquired from him fractional undivided interests in producing oil and gas leases. The pattern of their business arrangement was that Morgan should operate the leases and pay all expenses and Alvarez would reimburse him for her proportionate share thereof upon monthly invoices."

3. Conclusion No. 9 of the Court's Conclusions of Law reads as follows: "As between Hill and C. Ray Robinson, the latter's oil payment is not subject to plaintiff's claims insofar as they relate to the Lockmiller, Jennings and Mooney leases. However, since Hill holds a mort-

Robinson a production payment of 80% of her interest in and to all of the oil, gas and other hydrocarbons saved and marketed from two of the sixteen leases involved in this law suit, i. e., the W. B. Moore lease and the South Nitzel lease.[4] The production payment was to continue until the sum of $190,000.00 had been paid plus an amount equal to interest at the rate of five per cent on the diminishing balance in a fixed amount of $2,000.00 plus any gross production, severance or ad valorem taxes assessed against the production payment. The production payment is free and clear of all costs and expenses of development and operation. For this payment Robinson paid $10,000.00 in cash to Mrs. Hill and executed an installment note dated November 30, 1960, in the sum of $180,000.00 payable in annual installments of $30,000.00. This note was secured by a mortgage of the production payment from Robinson to Mrs. Hill; a part of this mortgage provided that the mortgage itself should be sufficient notice to all purchasing companies to pay the proceeds directly to the beneficiary, Mrs. Hill, and that Mr. Robinson hereby directed any and all such purchasers to pay direct to Mrs. Hill any such proceeds and receipts. This apparently was the basis of the trial court's decision that sums owing to Robinson could be applied to Mrs. Hill's debt to appellee. We fail to see, however, how the district court could make such a disposition. Even assuming that the mortgage authorized direct payment to Mrs. Hill and that the payments would be subject to attachment or garnishment by appellee to satisfy the judgment awarded him in the instant law suit these funds are not subject to any equitable lien covering expenses for all of the leases and there is no basis for the court to make a

direct application of these funds, notwithstanding the fact that said funds are within the jurisdiction and control of the court. The rights Mrs. Hill has in such funds result from actions between her and Mr. Robinson and must be considered separately from obligations owed appellee by Mrs. Hill. On the other hand, an equitable lien would apply to that portion of Robinson's money held by Sunray relating to the two leases, the W. B. Moore and South Nitzel, for those expenses owed appellee for work done on these specific leases. Appellant admits that such a lien exists under oil and gas law and in particular the provisions of the plan of unitization covering these operations. There was no specific finding by the trial court as to what expenses were directly related to the W. B. Moore lease and the South Nitzel lease. Such a determination will have to be made by the trial court upon remand.

■ Appellee urges that the sale of oil payments to Robinson was merely an income tax reduction scheme for Mrs. Hill and should be disregarded. Nevertheless, there is no doubt and no finding by the lower court but that the sale was supported by adequate consideration and was legally binding. The fact that the motive for this sale was to initiate tax savings does not change the legal consequences of the sale. Appellee further urges that the arrangement between Hill and Morgan constituted a mining partnership and that the change of the partnership interest by the transfer to Robinson did not affect any lien on partnership property. There was, however, no finding by the district court that the arrangement constituted a mining partnership and under the applicable Oklahoma law serious questions arise as to whether

gage on the oil payment and is authorized to receive all payments accruing to it from the purchase or production by Sunray DX Oil Company, plaintiff is entitled to enforce his liens out of such oil payment proceeds and Hill should be required to endorse the amount taken thereby as

payments on the note and mortgage given her by Robinson."

4. Also sold to Mr. Robinson was a payment from the South Moore lease which was not involved in this law suit.

the arrangement could be so characterized.[5]

Appellee further argues that all of the leases may be considered as a single arrangement and therefore no need exists to distinguish between the expenses on leases in which Robinson had an interest and expenses from all of the leases. This argument runs counter to the fact that Robinson obtained a separate legal interest in a portion of the leases. No relationship exists between Mrs. Hill and Robinson with regard to the remainder of the leases so that Robinson's payments could be charged with an equitable lien for expenses on the remaining leases.

The case is remanded with directions to modify the decree, with respect to the equitable lien decreed against the Robinson production payments, in conformity with the views expressed herein. The judgment appealed from is, in all other respects, affirmed.

5. There did not appear to be "co-operation" by Mrs. Hill sufficient to satisfy Oklahoma requirements for a mining partnership. See Katnig v. Johnson, Okl., 383 P.2d 195; Edwards v. Hardwick, Okl., 350 P.2d 495; White v. A. C. Houston Lumber Co., 179 Okl. 89, 64 P.2d 908; McAnally v. Cochran, 170 Okl. 368, 46 P. 2d 955. In addition, the operating agreement signed by the parties and effective as to a portion of the leases expressly stated that the arrangement was not to be considered a mining partnership. In Oklahoma Co. v. O'Neil, Okl., 333 P.2d 534, the Oklahoma Supreme Court honored a similar expressed intention and found a similar arrangement not to be a mining partnership.