**Glenn E. BRAS, Plaintiff-Appellant,**

**v.**

**Nelle E. BRAS, and Vinita M. Gibson, as Co-Executrixes of the Estate of O. D. Bras, a/k/a Orlando D. Bras, Deceased, Defendant-Appellees.**

**Glenn E. BRAS, Plaintiff-Appellant,**

**v.**

**Vinita M. GIBSON, Individually and Nelle E. Bras and Vinita M. Gibson, as Co-Executrixes of the Estate of O. D. Bras, a/k/a Orlando Bras, Deceased, Defendant-Appellees.**

**Glenn E. BRAS, Plaintiff-Appellant,**

**v.**

**Vinita M. GIBSON, Individually, and as Surviving Partner Under the Firm Name of J. C. McMillan Estate, a Partnership, et al., Defendant-Appellees.**

**Nos. 71–1703, 71–1704, 71–1705.**

United States Court of Appeals, Tenth Circuit.

July 13, 1972.

---

John R. Musgrave, St. Louis, Mo., for appellant.

Kay Wilson, Jr., Muskogee, Okl., for appellees.

Before JONES*, HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Glenn E. Bras filed three actions in the United States District Court for the Eastern District of Oklahoma. The Trial Court, sitting without a jury, denied recovery on all money claims but granted a partition relating to a 2,200 acre tract near Okemah, Oklahoma, in which Bras owns a 5/12 interest; his sister, Vinita M. Gibson, owns a 5/12 interest; and his deceased father, O. D. Bras, owned a 2/12 interest. From a denial of his prayer for money judgment claims, Bras brings this consolidated appeal.

Each of the actions arose from the operation of a general partnership known as the J. C. McMillan Estate and the property, real and personal distributed therefrom, including the 2,200 acre tract. The interest of the partners, Glenn, Vinita and O. D., coincided with their undivided interest in the Estate, together with all subsequent accruals and acquisitions thereto. The "Certificate of Partnership" agreement executed August 31, 1960, while referring to the partnership dating from December 16, 1941, contained no recitals relating to specific authorization of management, bookkeeping, financing or powers. The general business was that of farming and ranching.

Glenn Bras was a commercial pilot for Trans World Airlines until his retirement at age 60 in 1969. He resided in Kansas City, Missouri during the life of the partnership and, when not engaged

* Of the Fifth Circuit, sitting by designation.

in his duties with T.W.A., drove approximately 300 miles from his home to the partnership property some 10 miles north of Okemah, Oklahoma. There he undertook management of the partnership property and often performed manual work.

O. D. Bras lived in Okemah, Oklahoma until his death in 1968 at the age of 86. He managed the partnership property on and off for several years, but because of his advanced age, he did not participate in any management after 1965.

Vinita Gibson was divorced in 1949. She worked primarily as a secretary in order to support herself and her three sons. In 1959 she moved to Oklahoma City, Oklahoma where she now resides. Oklahoma City is located about 80 miles from the partnership property.

### No. 71–1703

Glenn Bras appeals from denial of his recovery of the value of improvements which he made to a 160 acre tract owned by his deceased father which adjoins the 2,200 acre tract. The 160 acre tract was acquired by O. D. Bras at a tax sale in 1937. Glenn made various improvements, commencing in 1963 and continuing until 1967, consisting of the construction of dams, ditches, culverts and water wells at a total cost of $18,155. His purpose was to improve the water supply to the ranch house on the partnership property. These improvements were made with his father's knowledge. While nothing herein indicates that O. D. Bras objected to these undertakings, there is no indication that he agreed thereto. Glenn Bras testified that following his mother's death and his father's remarriage, relations between Glenn and his father were very strained. They seldom communicated. Glenn Bras contends that under the doctrine of unjust enrichment he is entitled to recover the cost of these improvements.

 Quasi or constructive contracts are created by law without regard to the assent of the party bound, on the ground that they are dictated by reason

and justice. Anderson v. Copeland, 378 P.2d 1006 (Okl.1963).

"It is only where the person putting permanent improvements on the land of another does so under the bona fide belief that he has good title to the land that he is entitled to compensation for such improvements as against the owner of the land. The mere performance of labor or furnishings of materials in placing improvements on the land does not create an equitable lien against the land." 10A, Thompson on Real Property, § 5290 (1957).

Glenn Bras made the improvements to the 160 acre tract for the purpose of benefiting the adjoining partnership property in which he owned a ⁵⁄₁₂ interest. He did so unilaterally. His intent was to promote his own interests in the adjoining tract. He cannot recover reimbursement even though his father's land benefited thereby. We affirm.

### No. 71–1704

Glenn Bras, in his individual capacity, decided to carry on the partnership business after its dissolution in 1965. In this action he seeks pro rata contributions from his sister and his father's estate for improvements made to the partnership land after dissolution. The Trial Court held that the improvements were not made with the prior approval or consent of O. D. Bras or Vinita M. Gibson. Accordingly, the Court held that foreclosure of a mechanic's lien was not an available remedy in a suit by one co-tenant against other cotenants.

Bras, his sister, and his father each acquired their undivided interests in the partnership land by inheritance. The partnership lasted essentially from 1960 to 1965. After dissolution of the partnership, Glenn Bras operated the land by himself as a cotenant with the consent of his father and sister. During this period, Glenn paid the taxes assessed against the land, but he did not pay his sister or his father any rental. In the course of his sole operation, Bras made many improvements such as building roads, clearing fields and building

dikes. The cost of these improvements was $73,765. Apparently most of this work was done with O. D. Bras' knowledge.

■■■ We are unable to find support for the Trial Court's conclusion of law that foreclosure of a mechanic's lien is not a remedy available to one cotenant against another cotenant. However, we concur in the result, denying Glenn Bras recovery on his claim. This conclusion is dictated by Elling v. Kohler, 150 Okl. 129, 3 P.2d 161 (1930), where the Court stated that one cotenant is not responsible to another cotenant for his proportionate share of the cost of permanent improvements if it clearly appears that such improvements were unnecessary and were made without the consent of the other cotenant. Although there is indication that O. D. Bras had knowledge of the improvements, there is no evidence establishing that the improvements were made with the consent of either O. D. Bras or Vinita Gibson. It is a general rule of law that:

"[O]ne cotenant stands in such a fiduciary relationship to the others that any adverse claim he acquires inures to the benefit of all. Hence one cotenant cannot make improvements on the common property and hold the property responsible therefore without the consent of all. *To create a claim against the land for improvements there must be express agreement by the cotenants or some inequitable action that will justify the chancery courts in creating an equitable lien.*"
10A, Thompson on Real Property, § 5295 (1957). (Emphasis supplied).

By way of analogy we cite the following Oklahoma decisions which mandate upon one cotenant claiming against other cotenants the obligation of timely, openly and expressly bringing to their attention his adverse claim in order to prove denial or repudiation of their rights. Boatman v Beard, 426 P.2d 349 (Okl.1967); Westheimer v. Neustadt, 362 P.2d 110 (Okl.1961); International Land Co. v. Smith, 103 Okl. 101, 229 P. 601 (1924);

Records v. Miles, 200 Okl. 62, 191 P.2d 918 (1948); Beaver v. Wilson, 117 Okl. 68, 245 P. 34 (1926); Ludey v. Pure Oil Co., 157 Okl. 1, 11 P.2d 102 (1932).

Glenn Bras made the improvements on the land for a period of about five years before seeking any contributions from his cotenants. During this period he did not consult either in advance or after making the improvements, with either his father or sister, with respect to the merits of the projects or the costs involved. It is undisputed that after the partnership was dissolved, he had exclusive possession of the land. While he paid the taxes annually assessed against the land, he did not pay any rental to either O. D. Bras or Vinita Gibson. Whatever profits or benefits may have accrued from the use of the land were exclusive to Glenn Bras. His failure to seek either prior approval before proceeding with the improvements or pro rata contributions after making the improvements unquestionably, under the circumstances of this record, lulled his cotenants into the belief that they had not assumed any financial obligations for Glenn's unilateral activities. We affirm the trial court holding that Glenn Bras is not entitled to pro rata contributions.

### No. 71–1705

■■■ Glenn Bras sought pro rata contributions from his deceased father's estate and his sister in order to settle the outstanding partnership debts. The Trial Court held that Vinita Gibson was not liable for any of the debts. The Court found that when she assigned all of her interest in the partnership cattle by execution of the 1965 Bill of Sale she did so to Glenn in exchange for a release from all partnership debts which Glenn then assumed. The Court held that the estate of O. D. Bras was not liable for any debts because Glenn Bras had failed to file or present a creditor's claim with the co-executrixes before initiating this action.

During the operation of the partnership, Glenn Bras expended $55,500 for the purchase of partnership cattle and equipment without prior consultation with or consent of his father and sister. His father refused to execute renewal promissory notes in either late 1964 or early 1965. In 1965 Vinita Gibson refused to execute the notes. This led to the 1965 dissolution of the partnership when Vinita Gibson reluctantly gave her brother a bill of sale covering her interest in the partnership cattle in exchange for her release from all obligations under the notes secured by cattle and equipment chattel mortgages. The notes were the only partnership debts then known to Vinita. We concur in the Trial Court's finding that Vinita Gibson intended, and that Glenn Bras understood, that she be relieved of all partnership obligations by reason of her execution and delivery of the bill of sale.

In regard to the claim against the estate of O. D. Bras, we note that the money on which the claim is based was spent for cattle and machinery which Glenn Bras apparently still possesses. He has not liquidated these assets. Accordingly, the deficiency, if any, has not been determined. The appellant has not established an equitable right to contribution.

In order to satisfy the law of contracts certain expressions of promissory assent are necessary. The law of contract includes the entire group of jural relations created by certain facts, usually expressions of agreement. As such, a "contract" is commonly referred to as an agreement enforceable at law. Basic to the enforceability of a contract is the requirement that there be consideration and mutuality. The only expressions evidenced by this record are certain notes signed by O. D. Bras and Vinita Gibson binding upon their interests in the cattle and apparently some machinery and equipment acquired unilaterally by Glenn Bras. Out of concern for the expansive unilateral activities of Glenn giving rise to her potential financial liabilities, Vinita unwillingly surrendered to Glenn all of her right, claim, and interest in the cattle and all other property with the exception of her undivided ⁵⁄₁₂th interest in the 2,200 acre tract.

This record does not support Glenn Bras' contractual claims. He proceeded unilaterally to make improvements and acquisitions without the benefit of prior consultations with, nor consent from, his father and sister. His father's lips are now sealed in death. His sister became greatly concerned relating to her potential financial liability when she learned of the scope of Glenn's mode of operations evidenced by the renewal promissory notes with its potential for adverse impact upon her struggle for security. Her unwillingness to consent was evidenced by her execution of the Bill of Sale in 1965 after she refused to execute the renewal notes. O. D. Bras had previously made his concern known to Glenn when he refused to sign the renewal notes at Glenn's request. Neither O. D. Bras nor Vinita Gibson were in sympathy with Glenn's activities. They were unwilling to participate. Glenn's unbusinesslike attitude does not justify equitable relief in his behalf even though he may have proceeded in unilateral good faith.

A thorough review of the record discloses that there is substantial evidence in support of the Trial Court's judgment.

We affirm.