WENDOVER ROAD PROPERTY OWNERS ASSOCIATION, APPELLEE, *v.* KORNICKS, APPELLANT, ET AL.

(No. 49570—Decided October 15, 1985.)

*Irwin S. Haiman* and *William A. Barnett,* for appellee.

*Sherman S. Hollander,* for appellant.

PRYATEL, J. Gus Kornicks seeks reversal of a summary judgment entered against him on the complaint of the Wendover Road Property Owners Association (the "association") alleging he was unjustly enriched by road, sewer and water improvements made by the association. Additionally, he seeks reversal of the dismissal of his counterclaim and third-party complaint alleging slander of title.

In a complaint against Kornicks and the General Title Agency, Inc. ("General Title"),[1] the association alleged that the majority of persons owning property on Wendover Road decided to install sewers, water lines and pavement on Wendover Road when the city of Beachwood declined to install them. However, Kornicks and three other property owners were unwilling to participate in the private project. By the time the work was completed in early 1976, twenty-three lot owners had contributed approximately $10,621.60 each. Affidavits of Facts, as provided by R.C. 5301.252, were filed with the Cuyahoga County Recorder on each of the three[2] remaining lots, including the lot owned by Kornicks. The affidavit on Kornicks' property stated that (1) Kornicks was not a member of the association; (2) the members of the association agreed to pay their proportionate share of the Wendover Road improvements; (3) the cost for each participant was $10,490; and (4) the sum of $10,490 was due and owing from Kornicks as his proportionate share of the improvements.

Kornicks' lot, purchased for $230 in 1950, was in the middle of the block and fronted on Wendover Road and Timber-

[1] General Title is not a party to this appeal.

[2] Two property owners, not including Kornicks, eventually paid a share of the costs for the improvements.

lane Road, where improvements had been made earlier in the 1950s. On April 14, 1981, about five years after the improvements were made by the association, Harry Brown agreed to buy Kornicks' lot for $89,900. General Title learned of the Affidavit of Facts filed by the association. By agreement, the court ordered General Title to hold $15,000 in escrow. The court also ordered filing of the deed to Brown, along with a lien release from the association and its counsel, Irwin S. Haiman.

Subsequently, Kornicks filed a counterclaim alleging that his title was deliberately and maliciously slandered by the Affidavit of Facts. He sought release of the $15,000 held in escrow and filed a third-party complaint against Haiman, who had signed the Affidavit of Facts.

In answers to interrogatories submitted by defendant Kornicks, plaintiff association asserted that (1) it was not registered with the state of Ohio[3]; (2) defendant Kornicks had refused to participate in the project; (3) as a direct result of the improvements, the "unusable lot" of defendant was made "buildable and saleable"; (4) $255,000 worth of work was done; and (5) if the association was awarded the money it sought, it would be divided among the members pro rata after the costs of recovery were paid.

In answer to additional interrogatories submitted by Kornicks, the association acknowledged that it had no elected officers and that Kornicks had not been informed directly of the filing of the Affidavit of Facts.

In response to interrogatories submitted by the association, Kornicks maintained that he never participated in the association in any way, nor did he agree to the installation of any improvements. He answered that he had not offered the property for sale prior to February 1, 1976, but that he received a telephoned offer of $5,000 in 1967 and rejected it. While he acknowledged that the value of the property was probably greater after the 1976 Wendover improvements, he asserted his lot was "buildable" (before the Wendover improvements) by virtue of the 1950s' improvements on Timberlane Road. Kornicks did not subdivide the lot, but Brown, the person who bought the lot, divided it into two parcels. Kornicks stated that he spent more than $10,000 for the improvements on Timberlane Road and $750 to $1,200 to cut weeds and remove a tree. Also he paid $1,623 in closing costs in connection with the sale to Brown and expected to spend several thousands of dollars in attorney fees.

The trial court granted the association's motion to dismiss Kornicks' counterclaim and third-party complaint on the ground that they were filed beyond the statute of limitations, while Kornicks' motion for summary judgment was overruled.

The association then moved for summary judgment supported by a transcript of a deposition during which Brown stated that (1) he and his brother-in-law purchased the lot with the intention of subdividing it, (2) each planned to build a house on his half (one half fronted on Wendover and the other half on Timberlane); and (3) he would not have purchased the lot had it not been suitable for construction of two homes although he acknowledged he could have constructed one house on the lot. The value of each lot after the subdivision was $45,000, according to Brown.

The association's motion for summary judgment was granted in the amount of $9,784.33, plus interest.

Defendant Kornicks appeals.

---

[3] During the pendency of the instant action, the association provided proof of its registration pursuant to R.C. 1329.01(C).

Assignment of Error No. I

"(A) The trial court erred in dismissing appellant Gus Kornicks' counterclaim and third-party complaint for slander of title and in refusing to allow a claim to be asserted against the individual members of plaintiff, an unincorporated association, for slander of title."

Appellant Kornicks' actions for slander of title, in his counterclaim and third-party complaint, were dismissed on the association's motion which relied on the statute of limitations pursuant to R.C. 2305.11(A). The statute provides in pertinent part: "An action for * * * slander * * * shall be brought within one year after the cause thereof accrued * * *."

The Affidavit of Facts, which appellant alleges constituted the slander of title, was filed on March 9, 1976. The appellant's counterclaim and third-party complaint were filed on August 10, 1981, or more than five years later. Appellant contends that he did not learn of the affidavit until it was disclosed by the title search in connection with his sale of the property. He argues that the slander of title did not occur until the title company discovered the affidavit.

Appellant urges us to apply the discovery rule which the Supreme Court of Ohio adopted in *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111. Since the court has limited the application of the discovery rule to medical and legal malpractice actions, we decline to apply it to slander of title actions. We are particularly reluctant to adopt a rule that would extend the statute of limitations to run from the time a slander was discovered where a public record is involved. As we said in

*New York Life Ins. Co.* v. *Bunowitz* (1934), 18 Ohio Law Abs. 136, 138: " * * * It is the general theory of our law that public records are notice to all the world of what they speak. * * * " We also take note of the court's comment in *Guccione* v. *Hustler Magazine* (C.P. 1978), 64 Ohio Misc. 59, 60 [18 O.O. 3d 273]: "A cause of action accrues when the right to prosecute it begins. * * * "

We hold that the cause of action arose at the time the affidavit was filed with the recorder. Having so held, we need not reach appellant's arguments on the merits of his claim. His counterclaim and third-party complaint against attorney Haiman were properly dismissed as untimely.[4] Hence, the court's refusal to permit appellant to assert the untimely slander of title claim against individual members of the association was also proper.

In passing, we note that appellant asserts: "* * * [T]he slander of title actually occurred when the lien affidavit was found by the title company and the sale of the premises was thereby blocked. No damage occurred until that time, and the cause of action did not arise until then." However, he submits no brief on this damage question that appellee's counsel could address, nor any authorities which we could review. Accordingly, we invoke App. R. 12(A) and disregard the contention.

The first assignment of error is overruled.

"(B) The trial court erred in denying the motion of appellant Gus Kornicks for summary judgment and in granting the motion of plaintiff for summary judgment."

Appellant claims that there is no

---

[4] Appellee's contention that the dismissals of the counterclaim and third-party claim were proper also on the ground of *res judicata* is not supported by the record before this court.

precedent for compelling participation in the cost of street improvements by an unwilling landowner in the absence of a contract or legislative authority, nor are we aware of any.

Even the appellee concedes that generally one who officiously confers a benefit upon another is not entitled to restitution therefor. The court, in *Freedline* v. *Cielensky* (1961), 115 Ohio App. 138, 143 [20 O.O.2d 238], quoting from the Restatement of the Law, Restitution (1937) 15-16, Section 2, Comment *a*, notes:

" '*a.* * * * Policy ordinarily requires that a person who has conferred a benefit either by way of giving another services or by adding to the value of his land or by paying his debt or even by transferring property to him should not be permitted to require the other to pay therefor, unless the one conferring the benefit had a valid reason for so doing. A person is not required to deal with another unless he so desires and, ordinarily, a person should not be required to become an obligor unless he so desires.' "

However, the Restatement described an exception to that general rule:

"*b. Exceptional situations.* Under some conditions, it is desirable to encourage persons to interfere with the affairs of others. Thus *where it is imperatively necessary* for the protection of the interests of third persons or of the public that a duty owed by another should be performed, a stranger who performs it may be entitled to restitution from the other, even though his performance was without the other's knowledge or against his will. Furthermore, a person or his belongings may be in such jeopardy that a stranger is privileged to intervene and to recover for his salvage services. * * * " Restatement, *supra*, Section 112, Comment *b*, at pages 462-463. (Emphasis added.)

The record discloses no evidence that the improvements here were *imperatively necessary*. Nor does it reveal why the city, empowered by law to make improvements such as those in Wendover Road when they are determined to be a necessity pursuant to R.C. 727.12, denied the request of the association to make the improvements. Whether the city of Beachwood determined the improvements were unnecessary, or postponed the project for budgetary reasons, is not revealed in the record.

Appellee's case was grounded on equitable considerations of unjust enrichment. Traditionally, courts have held that equity will not aid a volunteer. *Farm Bureau Mut. Auto. Ins. Co.* v. *Buckeye Union Cas. Co.* (1946), 147 Ohio St. 79 [33 O.O. 259], paragraph seven of the syllabus. That the association was a volunteer in undertaking the project is undisputed. Neither is there any question that appellant Kornicks declined to participate in the project or that he could have built on his lot since there was access to sewers, water and a paved street on Timberlane Road. It also cannot be disputed that he did receive some benefit from the Wendover improvements.

As the Tenth Circuit said in *Bras* v. *Bras* (C.A. 10, 1972), 463 F.2d 413, 415, "[q]uasi or constructive contracts are created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice. * * * " However, the *Bras* court denied recovery for improvements made unilaterally by the plaintiff to the defendant's adjoining property, for the improvements coincidentally benefited the property of defendant. The court pointed out that plaintiff's intent was to promote his own interests and "[h]e cannot recover reimbursement even though * * * [defendant's] land benefited thereby. * * * " *Id.*

While we have been unable to find any case in Ohio dealing with similar

facts as here, a decision by the Supreme Court of Wisconsin is persuasive. In *Green Tree Estates, Inc.* v. *Furstenberg* (1963), 21 Wis. 2d 193, 124 N.W. 2d 90, the plaintiff developer opted to make certain street improvements privately. The court said:

"There is no doubt that the installation of curbs, gutters, and a street base for blacktop constituted improvements; if the defendants do not have to pay therefor they have enjoyed a windfall. The question remains open for determination, however, whether in equity their enrichment can be denominated unjust.

"We noted earlier the complete voluntary nature of the plaintiff's decision to have the improvements installed by private contractors. The plaintiff, by its own choice, without compulsion from the city and without the consent of the defendants, chose to proceed with the improvements. Indeed, it may fairly be said that the record demonstrates that the plaintiff had the work done for its *own* benefit; the improvements were undertaken by the plaintiff in order to facilitate the plaintiff's loan arrangements with the FHA.

"Is it appropriate under these circumstances to conclude that the resultant enrichment to the defendants is equitably unjust? We conclude that there was no mistake, emergency, or compulsion which would warrant the application of any equitable doctrine to aid the plaintiff." 21 Wis.2d at 198, 124 N.W.2d at 92. (Emphasis *sic*.)

The parallels here are persuasive. The association made the improvements to benefit its participants and did so voluntarily. The defendant did not consent. Nor was there any mistake, emergency or compulsion demonstrated.

The general state of the law on officious acts was summed up as follows by the Dean of the Vanderbilt University School of Law:

"One who, without intent to act gratuitously, confers a measurable benefit upon another, is entitled to restitution, if he affords the other an opportunity to decline the benefit or else has a reasonable excuse for failing to do so. If the other refuses to receive the benefit, he is not required to make restitution unless the actor justifiably performs for the other a duty imposed upon him by law." Wade, Restitution for Benefits Conferred Without Request (1966), 19 Van. L. Rev. 1183, 1212.

Here, appellant refused to participate in the project. Nor can it be argued that the improvements amounted to a duty imposed by law.

Additionally, while we recognize that appellant would have been obligated to pay for his share of the cost of the improvements had they been done by the city, we are cognizant also of the rights he would have been afforded under R.C. Chapter 727, *i.e.*, the right to object to any assessment, the limitation on assessments, etc.

Absent any agreement or statutory authority, we conclude that the association may not recover for improvements officiously made by the association.

The second assignment of error has merit.

The judgment of the trial court is affirmed as to appellant's counterclaim and third-party complaint since they were filed beyond the statute of limitations. The judgment of the trial court is overruled in (1) the granting of summary judgment to appellee, and (2) the denying of summary judgment to appellant.

Final judgment granted to the appellant on plaintiff's complaint.

*Judgment affirmed*
*in part and reversed*
*in part.*

MARKUS, P.J., and PATTON, J., concur.