[Cite as *State ex rel. Atty. Gen. v. Vela*, 2013-Ohio-1049.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, EX REL.<br>ATTORNEY GENERAL | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J. |
| -vs- | Case No. 12-CA-62 |
| MANUAL R. VELA, ET AL. | |
| | O P I N I O N |
| Defendants-Appellants | |

CHARACTER OF PROCEEDING:        Appeal from the Licking County Court of
                                Common Pleas, Case Nos.
                                02CV1158/05CV648


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         March 15, 2013


APPEARANCES:


For Plaintiff-Appellee                For Defendants-Appellants


VIVIAN P. TATE                        DAVID A. KOPECH
Principal Assistant Attorney General  Kopech & O'Grady LLC
Charitable Law Section                471 E. Broad St. Suite 2001
150 East Gay Street 23rd Floor        Columbus, Ohio 43215
Columbus, Ohio 43215

*Hoffman, J.*

{¶1} Defendants-appellants Manual R. Vela, et al. appeal the June 29, 2012 Judgment Entry entered by the Licking County Court of Common Pleas, which approved and adopted the magistrate's January 4, 2012 Decision with Findings of Fact and Conclusions of Law. Plaintiff-appellee is the state of Ohio, ex rel. Attorney General.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellants Manuel Vela and Judy Vela are husband and wife. Together, the Velas formed Symbiont NFP, Inc. ("NFP"), an Ohio non-profit corporation. Manuel Vela was the incorporator, director/trustee and administrator of NFP. Judy Vela was also extremely involved with the corporation, serving as a director/trustee and secretary.

{¶3} NFP contracts with Ohio counties and various states to facilitate foster home placement, provide training, and provide services for abused, neglected, or abandoned children. NFP is a private non-custodial agency licensed by the Ohio Department of Job and Family Services. As a 501(c)(3) public charity, NFP is entitled to the benefits and privileges afforded to federal tax exempt organizations, charitable organizations under Ohio common law, and charitable trusts under Ohio R.C. 109.23.

{¶4} The Velas were also majority shareholders in, held ownership interests in, and/or controlled various other companies which did business with NFP. Those companies included Symbiont, Inc., a for-profit Ohio corporation which provides professional services to NFP[1]; Fairfield Academy, Ltd., an Ohio limited liability company; Ohio Treatment Alliance ("OTA"), a for-profit Ohio corporation which offers independent living assistance, a residential center, and therapeutic services for male clientele;

---

[1] The Sybiont name was changed to Apex Mental Health Services.

McVee Holdings, Ltd., a for-profit Ohio corporation which leased vehicles and office equipment to NFP; and YAFGO, a for-profit Ohio corporation which provided clinical services to Fairfield Academy and NFP.

{¶5}   The Ohio Department of Job and Family Services ("ODJFS") receives federal dollars for foster care placement through the Title IV E program.  With the federal funds, ODJFS pays county agencies under contract.  The county agencies then pay the funds to private foster care placement agencies, such as NFP. NFP operated exclusively on public funds obtained through the Title IV E program.

{¶6}   In 1998, ODJFS was audited.  ODJFS and the Auditor of State's Office set up the parameters of the audit in a document titled "Agreed upon Procedures".   As ODJFS was responsible for the funds obtained through the federal Title IV E program, the audit involved twenty five private agencies, including NFP, which received these federal funds.  Certain expenditures of NFP were found to be noncompliant, requiring repayment to the federal government.

{¶7}   The Auditor focused primarily on NFP's programs and activities during the 1998 calendar year.  A draft report was provided to NFP for review and response. NFP, through its attorney, prepared an extensive reply to the draft audit report, specifically rejecting the establishment of an independent board.  The Auditor found the following noncompliance issues:

- The transfer of Fairfield Academy was not shown to be competitive and favorable to NFP, and resulted in NFP holding more liabilities than assets.

- NFP made loans to several of the Vela's companies in the amount of $430,000. Monies for these loans were obtained through NFP's line of credit. NFP paid the interest on the amounts drawn against its line of credit.

- Vehicle lease agreements made during the 1998 calendar year were not shown to be favorable to NFP. The lease agreements were never addressed in Board minutes, the Velas did not abstain from any Board decision related to these vehicles, and NFP paid $6,605 more than the value of the leased vehicles during 1998.

- NFP paid $15,200 of the $16,000 total cost of four seat licenses to the Ohio State University, but only one seat was in NFP's name. The remaining three seats were in the names of employees – Manuel Vela, Judy Vela, and David Morris.

- NFP, McVee, and OTA shared employees. However, NFP could not show how the costs for these employees were allocated between the companies based upon the time the workers actually spent on the business of each company. NFP overpaid its share for these employees by $28,000.

- OTA operated Fairfield Academy before the company was transferred to NFP. During that time, OTA became indebted to YAFGO. NFP paid $15,742 of OTA's debt after it acquired Fairfield Academy. There was no evidence NFP was liable for the debt.

- NFP, although tax exempt, paid taxes on a number of purchases.

- Companies owned by the Velas shared board members and employees with NFP. Every NFP board member was an employee of NFP and/or a board

member or employee of at least one other company owned or operated by Manuel Vela.

**{¶8}** The final audit report revealed NFP improperly spent $382,063. ODJFS was required to repay this amount to the federal government.

**{¶9}** The State of Ohio, ex rel. the Attorney General, filed a complaint against the Velas for disregard and exploitation of NFP. The Attorney General alleged, because NFP is a charitable trust, all assets of the organization were to be used for the express charitable purposes. The Attorney General sought removal of the Velas as the directors of NFP; the imposition of a constructive trust; and restitution of any assets or benefits wrongfully transferred to the Velas. The complaint named NFP as a necessary party, but did not allege claims against NFP.

**{¶10}** The Velas filed a motion for summary judgment. The Attorney General filed a motion for partial summary judgment, seeking a declaration NFP is a charitable trust as a matter of law. The trial court granted the Attorney General's motion for partial summary judgment, declaring NFP a charitable trust as a matter of law. The matter proceeded to bench trial before the magistrate. Following the presentation of evidence, the magistrate found the Velas were unjustly enriched by assets belonging to the trust. The magistrate issued her decision with findings of fact and conclusions of law on January 4, 2012. The Velas filed objections to the magistrate's decision. Via Judgment Entry filed June 29, 2012, the trial court overruled the Vela's objections and approved and adopted the magistrate's decision.

**{¶11}** It is from this judgment entry the Velas appeal, raising the following assignments of error:

**{¶12}** "I. THE TRIAL COURT ERRED BY SUSTAINING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

**{¶13}** "II. THE TRIAL COURT ERRED BY IMPROPERLY ADMITTING THE AUDIT REPORT AS AN EXCEPTION TO THE HEARSAY RULE PURSUANT TO EVID.R. 801(D)(2).

**{¶14}** "III. THE TRIAL COURT ERRED BY FINDING THAT PLAINTIFF MET THE PROPER BURDEN OF PROOF.

**{¶15}** "IV. THE TRIAL COURT ERRED BY FINDING THAT THE INDIVIDUAL DEFENDANTS WERE UNJUSTLY ENRICHED."

## STANDARD OF REVIEW

**{¶16}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

**{¶17}** Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 364 N.E.2d 267.

**{¶18}** It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265. The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293, 662 N.E.2d 264: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 309 N.E.2d 924.

I

{¶19} In their first assignment of error, the Velas contend the trial court erred in granting summary judgment in favor of the Attorney General and declaring NFP a charitable trust as a matter of law.

{¶20} R.C. 109.23 defines "charitable trust" as follows:

{¶21} "(A) "Charitable trust" means any fiduciary relationship with respect to property arising under the law of this state or of another jurisdiction as a result of a manifestation of intention to create it, and subjecting the person by whom the property is held to fiduciary duties to deal with the property within this state for any charitable, religious, or educational purpose.

{¶22} "(B) "Charitable trust" includes the fiduciary relationship, the entity serving as trustee, the status as trustee, the corpus of such trust, or a combination of any or all of such meanings, regardless of the primary meaning of any use of the term, that is necessary in any circumstances to effect the purposes of such sections.

{¶23} "* * *

{¶24} "(D) The fact that any person sought to be charged with fiduciary duties is a corporation, association, foundation, or any other type of organization that has, under judicial decisions or other statutes, been distinguished from a charitable trust does not provide a presumption against its being a charitable trust as defined in this section." R.C. 109.23.

{¶25} Pursuant to R.C. 109.23, in order to prove the existence of a charitable trust, a party must establish three elements: 1) a fiduciary relationship with respect to property arising under the law of this state or of another jurisdiction; 2) as the result of a

manifestation of intention to create the trust; 3) which subjects an individual by whom the property is held to fiduciary duties to deal with this property within this state for any charitable, religious, or educational purpose.

**{¶26}** The Velas assert there was neither "property" nor a "manifestation of intention" to create a "fiduciary relationship" with respect to the property; therefore, NFP cannot be a charitable trust.  We disagree.

**{¶27}** NFP's Articles of Incorporation provide, in relevant part:

A. Said corporation is organized for charitable and educational purposes to establish, organize, and operate a network of foster care boarding homes, group boarding homes and residential facilities to care for children and adolescents who have been determined to be abused, neglected, unruly, or dependent.  To provide orientation and support services necessary to families seeking to become certificated or retain certification as foster care providers; develop relationships between families and placed youth; education and training in child development, parenting, crisis management, financial management for the child in placement, emancipation and independent living skills, support structures, and to provide an environment that promotes the proper development, and the emotional, psychological, and/or physical treatment or support necessary for the individual in foster care to be reunited with his/her family or enter into an independent living status; and the making of distributions to organizations under Section 501(C)(3) of the Internal Revenue Code * * *and to do all things necessary or incidental to the purpose herein stated.

**{¶28}** "[T]he manifestation of intention to create a trust may be by written or spoken words or by conduct. No particular form of words or conduct is necessary for the manifestation of intention to create a trust." *Brown v. Holloway* (1981), 2nd Dist. No. CA 6689, citing Restatement of Trusts 2d Section 24, Restatement of Trusts 2d, Section 351, comment b, applied to charitable trusts. The plain language of NFP's Articles contemplates a fiduciary relationship between NFP and the children and families for whom the non-profit was created to serve.

**{¶29}** NFP's Articles also provide:

B. To receive and maintain a fund or funds of real or personal property, or both, and subject to the restrictions and limitations hereinafter set forth, to use and apply the whole or any part of the income therefrom and the principal thereof *exclusively for charitable and education purposes* either directly by contributions to organizations that qualify as exempt organizations* * *. (Emphasis added).

**{¶30}** We find NFP's Articles manifest the non-profit's intention to create a trust. The Articles specify NFP will use the funds it receives "exclusively for charitable and educational purposes." Additionally, NFP was established as a 501(C)(3) non-profit organization. In order to be recognized as such, NFP was required to be organized and operated exclusively for one or more of the purposes specified in Internal Revenue Code 501(C)(3). Charitable and educational purposes are specified purposes. As a result of its status as a 501(C)(3), NFP is exempt from federal income taxes and must file IRS Form 990 rather than the traditional corporate tax form. Further, NFP is prohibited from conferring any private benefit on any member, director, officer,

shareholder, or other private individual. NFP acknowledges this prohibition in its Articles:

> C. No part of the net earnings of the corporation shall inure to the benefit of any member, trustee, officer of the corporation, or any private individual (except that reasonable compensation may be paid for services rendered to or for the corporation affecting one or more of its purposes), and no member, trustee, officer of the corporation, or any private individual shall be entitled to share in the distribution of any of the corporate assets on dissolution of the corporation. No substantial part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting, to influence legislation, and the corporation shall not participate in or intervene in * * * any political campaign on behalf of any candidate for public office.

**{¶31}** NFP's Articles expressly prohibit the Velas from using funds from the non-profit for any purpose other than charitable and educational purposes.

**{¶32}** In a case involving a purported charitable trust, the Court must use liberal and broad rules of construction. *Barton v. Parrott* (1985), 25 Ohio Misc.2d 8, 495 N.E.2d 973. The law of equity favors a charitable trust. *Danner v. Shanafel* (1953), 159 Ohio St. 5, 110 N.E.2d 772.

**{¶33}** Based upon the foregoing, we find the trial court did not err in granting summary judgment in favor of the Attorney General. We further find the trial court did not err in declaring NFP a charitable trust as a matter of law.

**{¶34}** The Vela's first assignment of error is overruled.

II

{¶35} In their second assignment of error, the Velas contend the trial court erred in admitting the audit report as an exception to the hearsay rule pursuant to Evid. R. 801(D)(2). Specifically, the Velas argue the report contains hearsay statements made by persons outside the agency contrary to Evid. R. 803(8), and the report does not constitute a business record of the Auditor of State.

{¶36} As a public agency, the Auditor of State is required to obtain information through audits of public offices and private agencies pursuant to R.C. 117.28 and 117.29. The audit report relative to NFP was compiled and prepared by the Auditor's employees in furtherance of the Auditor's statutory duties. The information obtained and utilized by the Auditor's employees came directly from NFP and its officers, directors and employees. The audit report also included findings based upon NFP's business records. Accordingly, we find no error in the trial court's admission of the report.

{¶37} Assuming, arguendo, the trial court erred in admitting the audit report, we would find the Velas were not prejudiced by such error.

{¶38} Evid.R. 103 provides, in relevant part:

{¶39} "(A) Effect of erroneous ruling

{¶40} "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected* * *."

{¶41} Civ.R. 61 sets forth the harmless error rule in civil cases, providing in pertinent part that no error or defect in any ruling is "ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or

order, unless refusal to take such action appears to the court inconsistent with substantial justice."

{¶42} "Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision." *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 91 N.E.2d 690, paragraph three of the syllabus. If hearsay evidence is objected to and permitted to go to the jury, the judgment must be reversed unless it affirmatively appears in the record that the party is not prejudiced. *Westinghouse Elect. Corp. v. Dolly Madison Leasing & Furniture Corp.* (1975), 42 Ohio St.2d 122, 326 N.E.2d 651; *Wilson v. Barkalow,* 11 Ohio St. 471, 1860 WL 83; *Lowe v. Lehman,* 15 Ohio St. 179, 186.

{¶43} We find the Velas were not prejudiced.  The information contained in the audit report by the Auditor of State was received directly from NFP and its officers, directors and employee.  Such individuals testified at trial.

{¶44} The Vela's second assignment of error is overruled.

III

{¶45} In their third assignment of error, the Velas submit the trial court erred in finding they breached their fiduciary duties.

{¶46} To prevail on a breach of fiduciary duty claim, "a party must show the existence of a fiduciary relationship, failure to comply with a duty accorded that relationship, and damages proximately caused by that failure." *Morgan v. Ramby,* 12th

Dist. Nos. CA2010–10–095 & CA2010–10–101, 2012–Ohio–763, ¶ 25; *Keybank Natl. Assoc. v. Guarnieri & Secrest, P.L.L.,* 7th Dist. No. 07 CO 46, 2008–Ohio–6362, ¶ 33. A party must prove a breach of fiduciary duty by clear and convincing evidence. See, e.g., R.C. 1701.59.

**{¶47}** Upon review of the entire record, we find the trial court did not err in finding the Velas breached their fiduciary duties. The record is replete with evidence of self-dealing by the Velas.

**{¶48}** The evidence reveals NFP made loans in the amount of $430,000 to companies owned and managed by the Velas. NFP used funds from its line of credit and was required to pay interest on the amounts drawn. Fiduciary duties include the duty "to keep trust property separate and not commingle it with the trustee's personal property." *Jones v. Elsea* (2003), 4th Dist. No. 02-CA-27, 2003-Ohio-4900 at 18 (Citation omitted). Additionally, the Velas as directors transferred Fairfield Academy to NFP, which resulted in NFP holding more liabilities than assets. OTA operated Fairfield Academy before the company was transferred to NFP. During that time, OTA became indebted to YAFGO. NFP paid $15,742 of OTA's debt to YAFGO after acquiring Fairfield Academy. There was no evidence NFP was liable for the debt. A fiduciary has a duty to make the trust property productive. *Id.*

**{¶49}** Further, vehicle lease agreements made during the 1998 calendar year were not shown to be favorable to NFP. The lease agreements were never addressed in Board minutes, the Velas did not abstain from any Board decision related to these vehicles, and NFP paid $6,605 more than the value of the leased vehicles during 1998. NFP paid $15,200 of the $16,000 total cost of four seat licenses to the Ohio State

University, but only one seat was in NFP's name. The remaining three seats were in the names of employees – Manuel Vela, Judy Vela, and David Morris.

**{¶50}** In light of the aforementioned evidence, we find the trial court did not err in finding the Velas breached their fiduciary duty to NFP.

**{¶51}** The Velas' third assignment of error is overruled.

IV

**{¶52}** In their final assignment of error, the Velas submit the trial court erred in finding each of them individually had been unjustly enriched.

**{¶53}** The elements of an unjust enrichment claim are: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambelton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298.* Unjust enrichment is inapplicable to gifts or any officious act. *Wendover Rd. Property Owners Assn. v. Kornicks* (1985), 28 Ohio App.3d 101, 502 N.E.2d 226, syllabus.

**{¶54}** Although claiming their actions were prudent, reasonable, and in the best interest of NFP, the Velas acknowledged they used NFP funds to purchase Christmas and birthday gifts, and country club memberships, and to pay party expenses related to their for-profit companies, as well as to pay credit cards, parking tickets, and personal reimbursements. The NFP Articles require any income be used for charitable and educational purposes. We find there was sufficient evidence for the trial court to conclude the Velas were unjustly enriched by using NFP funds for their own personal interests.

**{¶55}** Under the "Assignments of Error" section of their Brief, the Velas set forth four alleged errors for our review. After arguing their fourth assignment of error, the Velas assert a fifth error under Section III, subsection C of their Brief. Specifically, the Velas contend the trial court had no legal authority for ordering "[n]either Manuel nor Judy Vela shall serve as an employee with authority to bind any charitable trust doing business in the State of Ohio nor shall either serve as trustee or officer of any charitable trust doing business in the State of Ohio."

**{¶56}** The Velas failed to separately assign as error the trial court's restriction on their future employment as required by App. R.16(A)(3). Accordingly this Court will not address this argument.

**{¶57}** The Velas' fourth assignment of error is overruled.

**{¶58}** The judgment of the Licking County Court of Common Pleas is affirmed.

By: Hoffman, J.

Delaney, P.J. and

Farmer, J. concur

s/ William B. Hoffman _____
HON. WILLIAM B. HOFFMAN


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO, EX REL.                    :
ATTORNEY GENERAL                          :
                                          :
        Plaintiff-Appellee                :
                                          :
-vs-                                      :        JUDGMENT ENTRY
                                          :
MANUAL R. VELA, ET AL.                    :
                                          :
        Defendants-Appellants             :        Case No. 12-CA-62


        For the reasons stated in our accompanying Opinion, the judgment of the Licking

County Court of Common Pleas is affirmed.  Costs to Appellants.




                                        s/ William B. Hoffman _____
                                        HON. WILLIAM B. HOFFMAN


                                        s/ Patricia A. Delaney _____
                                        HON. PATRICIA A. DELANEY


                                        s/ Sheila G. Farmer _____
                                        HON. SHEILA G. FARMER