[Cite as *State ex rel. Atty. Gen. v. Vela*, 2014-Ohio-3369.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, EX REL., ATTORNEY GENERAL OF OHIO | JUDGES: Hon. William B. Hoffman, P.J. Hon. John W. Wise, J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 13-CA-124 |
| MANUEL R. VELA, ET AL. | O P I N I O N |
| Defendants-Appellants | |

CHARACTER OF PROCEEDING:  Appeal from the Licking County Court of Common Pleas, Case Nos. 02CV01158 and 05CV00648

JUDGMENT:  Affirmed

DATE OF JUDGMENT ENTRY:  July 28, 2014

APPEARANCES:

For Plaintiff-Appellee

MIKE DEWINE
Ohio Attorney General

Submitted by: VIVIAN P. TATE
Principal Assistant Attorney General
Charitable Law Section
150 East Gay Street 23rd Floor
Columbus, Ohio 43215

For Defendants-Appellants

CHRISTOPHER L. LARDIERE
CHAD M. STONEBROOK
Lardiere McNair, LLC
3956 Brown Park Drive Suite B
Hilliard, Ohio 43026

*Hoffman, P.J.*

{¶1}   Defendants-appellants Manual R. Vela, et al. appeal the November 26, 2013 Judgment Entry entered by the Licking County Court of Common Pleas, which approved and adopted the magistrate's August 8, 2013 Decision denying their motion for relief from judgment. Plaintiff-appellee is the state of Ohio, ex rel. Attorney General.

**STATEMENT OF THE FACTS AND CASE**

{¶2}   Appellants Manuel Vela and Judy Vela ("the Velas") are husband and wife. Together, the Velas formed Symbiont NFP, Inc. ("NFP"), an Ohio non-profit corporation. Manuel Vela was the incorporator, director/trustee and administrator of NFP. Judy Vela was also extremely involved with the corporation, serving as a director/trustee and secretary.

{¶3}   NFP contracts with Ohio counties and various states to facilitate foster home placement, provide training, and provide services for abused, neglected, or abandoned children. NFP is a private non-custodial agency licensed by the Ohio Department of Job and Family Services. As a 501(c)(3) public charity, NFP is entitled to the benefits and privileges afforded to federal tax exempt organizations, charitable organizations under Ohio common law, and charitable trusts under Ohio R.C. 109.23.

{¶4}   The Velas were also majority shareholders in, held ownership interests in, and/or controlled various other companies which did business with NFP. Those companies included Symbiont, Inc., a for-profit Ohio corporation which provides professional services to NFP[1]; Fairfield Academy, Ltd., an Ohio limited liability company; Ohio Treatment Alliance ("OTA"), a for-profit Ohio corporation which offers independent

---

[1] The Sybiont name was changed to Apex Mental Health Services.

living assistance, a residential center, and therapeutic services for male clientele; McVee Holdings, Ltd., a for-profit Ohio corporation which leased vehicles and office equipment to NFP; and YAFGO, a for-profit Ohio corporation which provided clinical services to Fairfield Academy and NFP.

{¶5} The Ohio Department of Job and Family Services ("ODJFS") receives federal dollars for foster care placement through the Title IV E program. With the federal funds, ODJFS pays county agencies under contract. The county agencies then pay the funds to private foster care placement agencies, such as NFP. NFP operated exclusively on public funds obtained through the Title IV E program.

{¶6} In 1998, ODJFS was audited. ODJFS and the Auditor of State's Office set up the parameters of the audit in a document titled "Agreed upon Procedures". As ODJFS was responsible for the funds obtained through the federal Title IV E program, the audit involved twenty five private agencies, including NFP, which received these federal funds. Certain expenditures of NFP were found to be noncompliant, requiring repayment to the federal government.

{¶7} The Auditor focused primarily on NFP's programs and activities during the 1998 calendar year. A draft report was provided to NFP for review and response. NFP, through its attorney, prepared an extensive reply to the draft audit report, specifically rejecting the establishment of an independent board. The Auditor found the following noncompliance issues:

- The transfer of Fairfield Academy was not shown to be competitive and favorable to NFP, and resulted in NFP holding more liabilities than assets.

- NFP made loans to several of the Vela's companies in the amount of $430,000. Monies for these loans were obtained through NFP's line of credit. NFP paid the interest on the amounts drawn against its line of credit.

- Vehicle lease agreements made during the 1998 calendar year were not shown to be favorable to NFP. The lease agreements were never addressed in Board minutes, the Velas did not abstain from any Board decision related to these vehicles, and NFP paid $6,605 more than the value of the leased vehicles during 1998.

- NFP paid $15,200 of the $16,000 total cost of four seat licenses to the Ohio State University, but only one seat was in NFP's name. The remaining three seats were in the names of employees—Manuel Vela, Judy Vela, and David Morris.

- NFP, McVee, and OTA shared employees. However, NFP could not show how the costs for these employees were allocated between the companies based upon the time the workers actually spent on the business of each company. NFP overpaid its share for these employees by $28,000.

- OTA operated Fairfield Academy before the company was transferred to NFP. During that time, OTA became indebted to YAFGO. NFP paid $15,742 of OTA's debt after it acquired Fairfield Academy. There was no evidence NFP was liable for the debt.

- NFP, although tax exempt, paid taxes on a number of purchases.

- Companies owned by the Velas shared board members and employees with NFP. Every NFP board member was an employee of NFP and/or a board member or employee of at least one other company owned or operated by Manuel Vela.

{¶8} The final audit report revealed NFP improperly spent $382,063. ODJFS was required to repay this amount to the federal government.

{¶9} The State of Ohio, ex rel. the Attorney General, filed a complaint against the Velas for disregard and exploitation of NFP. The Attorney General alleged, because NFP is a charitable trust, all assets of the organization were to be used for the express charitable purposes. The Attorney General sought removal of the Velas as the directors of NFP; the imposition of a constructive trust; and restitution of any assets or benefits wrongfully transferred to the Velas. The complaint named NFP as a necessary party, but did not allege claims against NFP.

{¶10} The Velas filed a motion for summary judgment. The Attorney General filed a motion for partial summary judgment, seeking a declaration NFP is a charitable trust as a matter of law. The trial court granted the Attorney General's motion for partial summary judgment, declaring NFP a charitable trust as a matter of law. The matter proceeded to bench trial before the magistrate. Following the presentation of evidence, the magistrate found the Velas were unjustly enriched by assets belonging to the trust. The magistrate issued her decision with findings of fact and conclusions of law on January 4, 2012. The Velas filed objections to the magistrate's decision. Via Judgment Entry filed June 29, 2012, the trial court overruled the Vela's objections and approved and adopted the magistrate's decision.

**{¶11}** The Velas filed an appeal to this Court, which affirmed the trial court's June 29, 2012 Judgment Entry. *State of Ohio, ex rel. Attorney General v. Manual R. Vela, et al.*, Licking App. No. 12–CA–62, 2013 -Ohio- 1049.

**{¶12}** On June 28, 2013, the Velas filed a motion for relief from judgment as well as a Civ. R. 62 motion to stay. The magistrate conducted a hearing on August 5, 2013. Via decision filed August 8, 2013, the magistrate denied the Velas' motion for relief from judgment. The trial court denied the Civ. R. 62 motion to stay. The Velas filed objections to the magistrate's decision. Via Judgment Entry filed November 26, 2013, the trial court overruled the Velas' objections to the magistrate's decision, and approved and adopted said decision as order of the court.

**{¶13}** It is from this judgment entry, the Velas appeal, raising as error:

**{¶14}** "I. THE TRIAL COURT ERRED IN NOT TAKING INTO CONSIDERATION, NOR EXPLAINING WHY IT DISREGARDED, THE UNCONTRADICTED TESTIMONY OF EXPERTS.

**{¶15}** "II. THE TRIAL COURT ERRED BY CONCLUDING THAT A CLERICAL ERROR DID NOT OCCUR PURSUANT TO CIV.R. 60(A), IN THE FOLLOWING WAYS:

**{¶16}** "a. THE MAGISTRATE FAILED TO CONCLUDE THAT THE DAMAGES DECISION ERRONEOUSLY USED A TOTAL LIABILITY NUMBER RATHER THAN THE NET LIABILITY NUMBER.

**{¶17}** "b. THE MAGISTRATE FAILED TO RECOGNIZE THAT THE DAMAGES DECISION ERRONEOUSLY INCLUDED PAYROLL THAT WAS NEVER PAID AND THUS NEVER A DETRIMENT TO NFP.

**{¶18}** "c. THE DAMAGES DECISION ERRONEOUSLY INCLUDED RENT THAT WAS NEVER PAID AND THUS NEVER A DETRIMENT TO NFP.

**{¶19}** "d. THE DAMAGES DECISION ERRONEOUSLY INCLUDED A PAYMENT ALREADY MADE BY DEFENDANTS.

**{¶20}** "III. THE TRIAL COURT ERRED BY CONCLUDING THAT DEFENDANTS HAVE NOT DEMONSTRATED THEY ARE ENTITLED TO RELIEF UNDER CIV.R. 60(B)(4) IN THE FOLLOWING WAYS:

**{¶21}** "a. THE MAGISTRATE FAILED TO CONCLUDE THAT DEFENDANTS HAD A CHANGE IN CIRCUMSTANCES THAT MAKES THE PROSPECTIVE APPLICATION OF THE DAMAGES NO LONGER APPLICABLE.

**{¶22}** "b. THE MAGISTRATE FAILED TO CONCLUDE THAT THE DAMAGES DECISION ERRONEOUSLY USED A TOTAL LIABILITY NUMBER RATHER THAN THE NET LIABILITY NUMBER.

**{¶23}** "c. THE MAGISTRATE FAILED TO RECOGNIZE THAT THE DAMAGES DECISION ERRONEOUSLY INCLUDED PAYROLL THAT WAS NEVER PAID AND THUS NEVER A DETRIMENT TO NFP.

**{¶24}** "d. THE DAMAGES DECISION ERRONEOUSLY INCLUDED RENT THAT WAS NEVER PAID AND THUS NEVER A DETRIMENT TO NFP.

**{¶25}** "e. THE DAMAGES DECISION ERRONEOUSLY INCLUDED A PAYMENT ALREADY MADE BY DEFENDANTS, THE MAGISTRATE ERRED BY FAILING TO CONSIDER THAT THE DAMAGE CALCULATIONS HAVE NOT BEEN PREVIOUSLY ADDRESSED IN THE PLEADINGS OR JUDGMENT.

**{¶26}** "IV. THE TRIAL COURT ERRED BY CONCLUDING THAT DEFENDANTS HAVE NOT DEMONSTRATED THEY ARE ENTITLED TO RELIEF UNDER CIV.R. 60(B)(5), IN THE FOLLOWING WAYS:

**{¶27}** "a. THE MAGISTRATE ERRED BY FAILING TO RECOGNIZE THAT THE JUDGMENT IS NOT EVIDENCED BY ANY NUMBERS IN THE OPINION.

**{¶28}** "b. THE MAGISTRATE FAILED TO CONCLUDE THAT THE DAMAGES DECISION ERRONEOUSLY USED A TOTAL LIABILITY NUMBER RATHER THAN THE NET LIABILITY NUMBER.

**{¶29}** "c. THE MAGISTRATE FAILED TO RECOGNIZE THAT THE DAMAGES DECISION ERRONEOUSLY INCLUDED PAYROLL THAT WAS NEVER PAID AND THUS NEVER A DETRIMENT TO NFP.

**{¶30}** "d. THE DAMAGES DECISION ERRONEOUSLY INCLUDED RENT THAT WAS NEVER PAID AND THUS NEVER A DETRIMENT TO NFP.

**{¶31}** "e. THE DAMAGES DECISION ERRONEOUSLY INCLUDED A PAYMENT ALREADY MADE BY DEFENDANTS.

**{¶32}** "V. THE TRIAL COURT ERRED BY DENYING DEFENDANTS' MOTION TO STAY ENFORCEMENT OF JUDGMENT."

I

**{¶33}** In their first assignment of error, the Velas maintain the trial court erred by either failing to consider, or failing to explain why it disregarded, the uncontradicted testimony of experts.

**{¶34}** "[I]t is well-settled that 'triers of fact are not required to accept evidence simply because it is uncontroverted, unimpeached, or unchallenged.' " *Argie v. Three*

*Little Pigs, Ltd.,* 10th Dist. No. 11AP–437, 2012–Ohio–667, ¶ 18, quoting *Smith v. Simkanin,* 5th Dist. No.2011 CA 00045, 2011–Ohio–6123, ¶ 32, citing *Ace Steel Baling, Inc. v. Porterfield,* 19 Ohio St.2d 137, 138 (1969). This same rule applies to expert testimony. *State v. White,* 118 Ohio St.3d 12, 2008–Ohio–1623, ¶ 71 (stating "[a] trial court is not required to automatically accept expert opinions offered from the witness stand"), citing *State v. Dickerson,* 45 Ohio St.3d 206, 210 (1989).

**{¶35}** We find nothing in the record to establish the trial court either expressly or implicitly failed to consider or disregarded the testimony of the Velas' experts. It was for the trial court to determine what weight, if any, to give the testimony.

**{¶36}** The Velas' first assignment of error is overruled.

II

**{¶37}** In their second assignment of error, the Velas contend the magistrate erred by concluding the damages award was not a clerical error pursuant to Civ. R. 60(A).

**{¶38}** Civ. R. 60(A) reads:

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

**{¶39}** Civ.R. 60(A) permits a trial court, in its discretion, to correct clerical mistakes that are apparent on the record but does not authorize a trial court to make substantive changes in judgments. *Londrico v. Delores C. Knowlton, Inc.,* 88 Ohio App.3d 282, 285, 623 N.E.2d 723 (1993). The term "clerical mistake" refers to a mistake or omission mechanical in nature and apparent on the record that does not involve a legal decision or judgment. *Id.* at 285, 623 N.E.2d 723. It is a type of error "identified with mistakes in transcription, alteration or omission of any papers and documents which are traditionally or customarily handled or controlled by clerks but which papers or documents may be handled by others." *Dentsply Internatl., Inc. v. Kostas,* 26 Ohio App.3d 116, 118, 498 N.E.2d 1079 (1985); 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490; *See, generally,* McCormac & Solimine, Ohio Civil Rules Practice (3d Ed.2003) 368, Section 13.34.

**{¶40}** The Velas submit the magistrate relied on a 1998 Auditor's Report in calculating damages.  The report found the transfer of Fairfield Academy resulted in $258,390, in assets for NFP, and $349,477, in liabilities.  Accordingly, NFP ended up with a net liability of $96,087.  The magistrate utilized the $349,477 total liability figure in calculating damages.  The Velas assert the use of the total liability figure was a clear clerical error and not the intent of the magistrate.  The magistrate failed to factor in the total assets NFP received in the transfer of Fairfield Academy.

**{¶41}** The Velas further argue the magistrate failed to recognize some of the liabilities which were included in the total liabilities figure never resulted in a detriment to NFP.  For example, the $181,770 payroll which liability was an account payable by Fairfield Academy, was never paid by NFP.  The Velas assert they should not be

responsible for repaying money for payroll which they never received. They conclude the magistrate's oversight was a clerical error as contemplated by Civ. R. 60(A).

**{¶42}** In addition, the Velas maintain another liability included in the damages decision was $61,800 in accrued rent. Like the payroll liability, NFP never paid the rent liability. The Velas reiterate they should not be responsible for repaying money they never received, and the magistrate's oversight was a clerical error.

**{¶43}** Finally, the Velas argue the magistrate failed to reduce the damage decision by $47,702, the amount they already repaid to the Ohio Department of Job and Family Services.

**{¶44}** We do not find these alleged mathematical errors to fall within the meaning of "clerical mistakes" as contemplated by Civ. R. 60(A). These alleged errors would create a substantive change to the final judgment entry; therefore, a correction is not authorized pursuant to Civ. R. 60(A).

**{¶45}** The Velas' second assignment of error is overruled.

III

**{¶46}** In their third assignment of error, the Velas claim the trial court erred in concluding they failed to demonstrate they were entitled to relief under Civ. R. 60(B)(4).

**{¶47}** Civ.R. 60(B)(4) provides a judgment may be vacated when "the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application[.]"

**{¶48}** Civ.R. 60(B)(4) offers relief from judgments which have been satisfied or which have become inequitable. Relief under Civ.R. 60(B)(4) must be warranted by

events occurring subsequent to the entry of the judgment in question. *Old Phoenix Natl. Bank v. Sandler* (1984), 14 Ohio App.3d 12, 13, 14 OBR 15, 16, 469 N.E.2d 943, 944. Events which occurred prior to judgment cannot be relied upon as grounds to vacate the judgment pursuant to Civ.R. 60(B)(4). *Id.*

**{¶49}** The Velas submit financial changes for themselves and NFP since the conclusion of the trial make the prospective enforcement of the judgment inequitable; therefore, they are entitled to relief under Civ. R. 60(B)(4). They explain they have "poured a large amount of their own personal money into NFP, and it would be inequitable to prospectively hold them accountable to the judgment." Brief of Appellants at 20. The Velas note the magistrate would not hear any testimony at trial regarding this issue.

**{¶50}** The Velas also assert they are entitled to relief under Civ. R. 60(B)(4) based upon the arguments presented in Assignment of Error II, supra.

**{¶51}** Finally, the Velas contend they could not have addressed the damages calculation at trial as such did not become apparent until after final judgment was rendered.

**{¶52}** The Velas seek relief under Civ. R. 60(B)(4) based upon events which occurred prior to judgment. The evidence does not establish the Velas' claims relate to events which occurred after the entry of judgment. "The ' * * * it is no longer equitable * * * ' clause of Civ.R. 60(B)(4) was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control." *Knapp v. Knapp* (1986), 24 Ohio St.3d 141, 146. The Velas had the opportunity to foresee or control the circumstances giving rise to their financial woes.

**{¶53}** Assignment of Error III is overruled.

IV

**{¶54}** In their fourth assignment of error, the Velas argue the trial court erred in concluding they had not demonstrated they were entitled to relief under Civ. R. 60(B)(5).

**{¶55}** Civ. R. 60(B)(5) provides, "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * *(5) an  other reason justifying relief from the judgment."

**{¶56}** The Velas explain they presented expert testimony to show there was no logical accounting of the numbers to arrive at the total damages of $413,465; therefore, they are entitled to a recalculation of the amount of damages.

**{¶57}** "A Civ. R.60(B) motion for relief from judgment cannot be used as a substitute for a timely appeal or as a means to extend the time for perfecting an appeal from the original judgment. *Key v. Mitchell*, 81 Ohio St.3d 89, 90-91 (1998).  Any claims or arguments that were not raised in a timely appeal, but could have been, are precluded from being raised in a subsequent Civ. R. 60(B) motion. *Id.* at 91.

**{¶58}** We find the Velas' challenge to the calculation of damages could have been raised in the original appeal filed in this matter.  Accordingly, we find their Civ. R. 60(B) motion was not the appropriate means through which to raise the alleged error in the calculation of damages.  Res judicata bars challenging the alleged mathematical errors now when they could have been raised on direct appeal.

**{¶59}** The fourth assignment of error is overruled.

V

{¶60} In their final assignment of error, the Velas assert the trial court erred in denying their motion to stay enforcement of the judgment. We disagree.

{¶61} Civ. R. 62(A) provides:

*In its discretion* and on such conditions for the security of the adverse party as are proper, the court *may* stay the execution of any judgment or stay any proceedings to enforce judgment pending the disposition of a motion for a new trial, or a motion for relief from a judgment or order made pursuant to Rule 60, or of a motion for judgment notwithstanding the verdict made pursuant to Rule 50. (Emphasis added).

{¶62} Pursuant to the language of Civ. R. 62(A), we find a trial court's decision as to whether to grant or deny a stay should be reviewed under an abuse of discretion standard.

{¶63} Upon review, we find the trial court did not abuse its discretion in denying the Velas' motion for stay pending the proceedings on the Civ. R. 60 motions.

{¶64} The fifth assignment of error is overruled.

{¶65}  The judgment of the Licking County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur